```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/18/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IBRAHIM ALTHNAIBAT,

                       Plaintiff,

-against-

CHAD WOLF, Acting Secretary, U.S. Department of Homeland Security (DHS); MARK KOUMANS, Acting Director, U.S. Citizenship and Immigration Services (USCIS); THOMAS CIOPPA, New York District Director, USCIS, DHS; SUSAN QUINTANA, New York Field Office Director, USCIS, DHS: and CHRISTOPHER A. WRAY, Director, Federal Bureau of Investigations,

                       Defendants.[1]

No. 19-cv-3245 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Ibrahim Althnaibat ("Plaintiff") brings this action pursuant to 8 U.S.C. § 1447 against Defendants Chad Wolf, Acting Secretary of the U.S. Department of Homeland Security ("DHS"), Mark Koumans, Acting Director of the U.S. Citizenship and Immigration Services ("CIS"), Thomas Cioppa, New York District Director for CIS, Susan Quintana, New York Field Officer Director for CIS, and Christopher A. Wray, Director of the Federal Bureau of Investigations ("FBI") (collectively, "Defendants") in connection with his application for naturalization to become a United States citizen. (Compl., ECF No. 1.) Plaintiff seeks a hearing on his application or, in the alternative, a court order remanding the matter back to CIS with an instruction to grant the application. (*Id.*)

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the following individuals have been automatically substituted as defendants in this action: (1) Chad Wolf is now the Acting Secretary of Homeland Security and is substituted for former Secretary of Homeland Security, Kirstjen Nielsen; (2) Mark Koumans is now the Acting Director of the U.S. Citizenship and Immigration Services and is substituted for former Director of the U.S. Citizenship and Immigration Services, L. Francis Cissna; and (3) Susan Quintana is now the New York Field Officer Director for the U.S. Citizenship and Immigration Services and is substituted for former Acting Director, Barbara Owlett.

Before the Court is Defendants' motion to remand Plaintiff's application back to CIS pursuant to 8 U.S.C. § 1447(b). (ECF No. 12.) For the following reasons, Defendants' motion is GRANTED.

**BACKGROUND**

Plaintiff is a native of Israel and a citizen of Jordan. (Compl. ¶¶ 1,4.) Following his marriage to a U.S. Citizen, Plaintiff became a permanent resident in the United States on July 7, 1997. (*Id.* ¶ 14.) On or about January 2006, Plaintiff applied for naturalization as a U.S. citizen on the basis that he had been a lawful resident of the United States for five years and was otherwise eligible for naturalization. (*Id.* ¶ 16.) Although an interview was scheduled for May 2006, CIS subsequently cancelled the interview and never rescheduled it, instead issuing a Notice of Intent to Deny ("NOID") the application on February 2011. (*Id.*) The NOID alleged that Plaintiff's original marriage was void as bigamous, and thus he had not been lawfully admitted for permanent residence and was not eligible for naturalization. (*Id.* ¶ 17.)

In response to the NOID, Plaintiff withdrew his naturalization application, and the application was deemed withdrawn on March 24, 2011. (*Id.* ¶ 18.) Thereafter, in December 2011, Plaintiff was issued a Notice to Appear ("NTA") for proceedings before the Immigration Court, which alleged that Plaintiff was removable from the United States due to the invalid marriage through which he gained permanent residence. (*Id.* ¶ 19.) In February 2014, the Immigration Judge found Plaintiff removable as charged in the NTA, but Plaintiff applied for a waiver of inadmissibility pursuant to 8 U.S.C. § 1227(a)(1)(h). (*Id.* ¶ 21.) Plaintiff supported his application by submitting extensive evidence about himself, including a certificate related to Plaintiff's

February 2010 conviction for attempting to evade or defeat New York's cigarette and tobacco tax.[2] (*Id.* ¶¶ 20-21.)

On April 4, 2016, the Immigration Judge granted Plaintiff's application, without opposition from DHS, which preserved his permanent residence retroactive to 1997. (*Id.* ¶ 22.) Later that month, Plaintiff again filed an application for naturalization on the basis that he had been a lawful resident of the United States for more than five years, had shown good moral character during the statutory period, and was otherwise eligible for naturalization. (*Id.* ¶ 23.) Plaintiff supported his application by attaching his certificate of disposition for his conviction and disclosing his prior involvement in removal proceedings. (*Id.*)

On November 2017, Plaintiff was interviewed by CIS in connection with his application. (*Id.* ¶ 24.) During the interview, Plaintiff discussed his criminal conviction and the circumstances relating to his marriage. (*Id.*) At the conclusion of the interview, Plaintiff provided a sworn statement in which he again admitted that his 1997 marriage was invalid and that he had entered into it to gain permanent residence in the United States. (*Id.*)

Plaintiff has not received any response from CIS since the date of his interview, despite repeated inquiries about the status of his application. (*Id.*) On April 11, 2019, well after the 120-day statutory period provided by 8 U.S.C. § 1447(b) had lapsed, Plaintiff commenced this action against Defendants seeking a hearing on his application for naturalization or, in the alternative, an order of remand to CIS with an instruction to grant the application. (*Id.* ¶ 26 & p. 8.)

---

[2] In 2009, Plaintiff had been arrested and charged in New York State Supreme Court, Westchester County, with a number of offenses arising out of the sale of untaxed cigarettes. (Compl. ¶ 20.) In February 2010, Plaintiff pled guilty to one count of attempting to evade or defeat the cigarette and tobacco tax in violation of New York State Tax Law § 1814(a)(1), a Class E Felony. (*Id.*) Plaintiff was sentenced to five years' probation, which he duly completed. (*Id.*) Plaintiff was thereafter issued a certificate of relief from disabilities. (*Id.*)

On June 17, 2019, after Plaintiff commenced this action, CIS sent a Form G-56 Call in Notice ("CIN") to Plaintiff, which requested that he appear on July 18, 2019 for an updated review of his pending application. (Decl. of David Scott Velez ("Velez Decl."), ECF No. 13, ¶ 4.) the CIN requested that Plaintiff bring his permanent resident card, passports, and original birth certificate with certified translation. (*Id.*) Neither Plaintiff nor any representative appeared as requested, which Plaintiff's counsel explains was due to CIS no longer having jurisdiction over Plaintiff's application by virtue of his filing this action. (*Id.*; Decl. of Paul O'Dwyer, ECF No 16-1, ¶ 2); *see also Bustamante v. Napolitano*, 582 F.3d 403, 405-06 (2d Cir. 2009) (holding that "only the district court has jurisdiction over a naturalization application once an applicant files a proper Section 1447(b) petition"). CIS avers that it is willing and able to complete adjudication of Plaintiff's application within sixty days after Plaintiff appears at the CIN. (Velez Decl. ¶ 5.)

## DISCUSSION

Defendants ask the Court to remand Plaintiff's application to CIS for adjudication. (Defs.' Mem. of Law in Supp. of Mot. to Remand, ECF No. 14, at 1.) Defendants explain that CIS is ready to adjudicate Plaintiff's application within 60 days of the date that Plaintiff appears at a local CIS office for an updated review of his application. (*Id.* at 4 (citing Velez Decl. ¶ 5).) As will be explained below, the Court agrees that remand is appropriate.

Under the Immigration Act of 1990, Pub. L. No. 101-649, Title IV, 104 Stat. 4978, 5038-48 (Nov. 29, 1990) (the "Act"), the "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a). The administrative naturalization process itself, however, is handled by CIS.[3] *See Chan v. Ganter*, 464 F.3d 289, 290-

---

[3] "The law governing naturalization has been described as a five-stage process." *See Kakushadze v. Chertoff*, No. 07 Civ. 8338(DF), 2008 WL 2885292, at *4 (S.D.N.Y. July 25, 2008). *First*, the applicant must submit completed application materials to the CIS. *See Langer v. McElroy*, No. 00 Civ. 2741(RWS), 2002 WL

91 (2d Cir. 2006). Although the "Act ensures that naturalization applications granted by USCIS never come before the district court," it does "secure[] an applicant's right to obtain judicial review . . . upon the request of [the applicant]" in two narrow circumstances. *See Bustamante*, 582 F.3d at 410. On one hand, an applicant may seek a *de novo* judicial review when his or her application is denied "after a hearing before an immigration officer under [8 U.S.C. §] 1447(a)" 8 U.S.C. § 1421(c). Separately, an applicant may seek judicial review when CIS fails "to make a determination" on his or her application "before the end of the 120-day period after the date on which [his or her] examination [by CIS] is conducted." 8 U.S.C. § 1447(b). If an applicant pursues this second route, as is the case here, the court has exclusive jurisdiction over the naturalization petition and "may either determine the matter or remand the matter, with appropriate instructions, to [CIS] to determine the matter." *Bustamante*, 582 F.3d at 405-06 (quoting 8 U.S.C. § 1447(b)).

Here, although Defendants do not provide Plaintiff with an indication of how CIS will adjudicate his application, they have made it clear that the adjudication will occur within a definite timeframe: 60 days from the date of his CIN interview. (Def. Mot. 4; Def. Reply in Supp. of Mot. to Remand, ECF No. 15, at 4.) Thus, within 60 days of CIS's updated review—which seemingly can be scheduled forthwith by CIS (*see* Velez Decl. ¶ 4)—Plaintiff will learn that his application was either approved or rejected. Given Defendants' representation, as well as CIS's relevant expertise in this area and its overall familiarity with Plaintiff's application, CIS is, at this juncture, in the best position to provide Plaintiff with prompt resolution on his application. *See Tochaei v.*

---

31789757, at *2 (S.D.N.Y. Dec. 13, 2002) (citing 8 U.S.C. § 1445(a); 8 C.F.R. §§ 316.2, 316.4, 334.1, 334.2). *Second*, the Government investigates the applicant's background. *Id.* (citing 8 U.S.C. § 1446(a); 8 C.F.R. §§ 335.1, 335.2). *Third*, the applicant undergoes testing with respect to the statutory requirements of English proficiency and knowledge of the history and government of the United States. *Id.* (citing 8 U.S.C. § 1423(a)). *Fourth*, the applicant is examined under oath by a naturalization officer who will either grant or deny the application within 120 days of the interview. *Id.* (citing 8 C.F.R. §§ 316.14, 335.2). *Finally*, if the application is approved, the applicant will attend an oath ceremony at which he or she must reaffirm his or her prior answers and swear allegiance to the United States. *Id.* (citing 8 U.S.C. § 1448; 8 C.F.R. § 310.3).

*Kelly*, No. 1:17-cv-00654 (MAD/CFH), 2018 WL 1768276, at *2 (N.D.N.Y. Apr. 12, 2018) ("Remand is discretionary but generally appropriate in the immigration context." (citing *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002))). Accordingly, it would be most prudent for the Court to exercise its discretion conferred by Section 1447(b) to remand the application to CIS.

Notwithstanding the above, Plaintiff raises two main arguments in opposing remand. Plaintiff first contends that the Federal Rules of Civil Procedure only provide Defendants with two options: file an answer or move to dismiss under Rule 12(b). (Pl. Opp. to Defs. Mot. ("Pl. Opp."), ECF No. 16, at 7.) However, this argument ignores the plain language of the statute, which contemplates that a motion to remand is available under Section 1447(b). *See Vasquez-Chincoya v. McNamee*, No. CV-07-1880-HU, 2008 WL 11390846, at *2 (D. Or. July 14, 2008) (rejecting contention that defendant's "motion to remand should be denied because such a motion is a 'pre-answer motion' that is not recognized or permitted under Federal Rule of Civil Procedure 12" because "[t]he statute itself provides for the motion to remand"). Moreover, Plaintiff cites to no authority—nor has this Court identified any in its own research—for the proposition that a motion to remand can only be made after a defendant files an answer. Conversely, as Defendants note, numerous courts have remanded naturalization applications prior to any answer being filed. *See, e.g.*, *Tochaei*, 2018 WL 1768276 at *2 (granting pre-answer motion to remand to allow CIS to address plaintiff's application error); *Alomari v. Keisler*, No. 07 Civ. 628 (RMB), 2007 WL 3255004, at *3 (S.D.N.Y. Nov. 1, 2007) (ordering remand after denying a pre-answer motion to dismiss so that the FBI could expedite its background check and CIS could expeditiously resolve plaintiff's application thereafter); *Alhamedi v. Gonzales*, No. 07 Civ. 2541 (JGK), 2007 WL 1573935, at *4 (S.D.N.Y. May 30, 2007) (same).

Plaintiff's second basis to deny Defendants' motion to remand is that ordering a remand at this juncture goes against the text and spirit of the statute, effectively amounting to the Court declining jurisdiction over his application. (Pl. Opp. at 9.) In so arguing, Plaintiff points to the Second Circuit's opinion in *Bustamante v. Napolitano* to contend that it is incumbent on the Court to solicit the parties' respective positions before entertaining a remand motion. (*Id.* at 8-9.) The Court disagrees. Although the *Bustamante* Court noted, in dicta, that "[i]nevitably[] the district court will solicit the parties' views," the Second Circuit also recognized that Section 1447(b) was designed to give courts "flexibility" when determining how to exercise their jurisdiction. *See Bustamante*, 582 F.3d at 407-09. And, more critically, that exercise of jurisdiction includes deciding whether the circumstances warrant a remand of a naturalization application back to CIS. *See id.* Nothing in *Bustamante* supports the proposition that Defendants must file an answer—or for that matter, indicate how they would ultimately adjudicate Plaintiff's application—for the Court to be able to decide whether remand is appropriate under the circumstances.

In further support of this second contention, Plaintiff maintains that ruling on a motion to remand before obtaining Defendants' position on his application would render the statute "completely superfluous." (Pl. Opp. 8.) Notwithstanding the fact that Defendants' motion essentially states their position on Plaintiff's complaint (*i.e.*, CIS is prepared to adjudicate Plaintiff's application within 60 days), his argument otherwise misses the mark. Plainly stated, each application brought under Section 1447(b) warrants an individualized assessment to determine how the Court should exercise its jurisdiction. That assessment may, in some circumstances, favor adjudicating the naturalization application, while in other cases, it will favor remand. And whether the Court will have sufficient information at the pre-answer stage to make this assessment will inevitably vary with the facts before it as well.

To be clear, Defendants do not argue, nor would this Court agree, that remand will always be warranted where a defendant moves for remand in response to a complaint filed under Section 1447(b). *See Bustamante*, 582 F.3d at 410 ("Congress intended for the district court to have sole authority to decide applications after a Section 1447(b) petition has been filed, and [] USCIS cannot interfere with the court's jurisdiction by making a decision, unless, of course, the district court remands to the agency."). Rather, in this particular case, Defendants have expressly committed to adjudicating Plaintiff's application within 60 days of his to-be-scheduled CIN interview, thereby ensuring, one way or another, resolution and closure on this chapter of Plaintiff's naturalization application process. In this Court's view, these specific facts provide sufficient assurance that remand is appropriate, particularly when considering CIS's expertise in the area, its familiarity with Plaintiff's application, and the need to promote judicial economy.

In sum, the Court GRANTS Defendants' motion to remand Plaintiff's naturalization application. As part of this order, the Court will provide appropriate instructions to CIS, detailed below, so as to ensure a timely resolution of Plaintiff's application and, if necessary, the administrative appeal process.

## CONCLUSION

For the foregoing reasons, Defendants' motion to remand is GRANTED. This case is REMANDED to the U.S. Citizenship and Immigration Services ("CIS") for prompt resolution, with the following appropriate instructions pursuant to 8 U.S.C. § 1447(b):

1. CIS shall schedule its Form G-56 Call in Notice meeting with Plaintiff for an updated review of his pending application and so that he can provide his permanent resident card, passports, and original birth certificate with certified translation. CIS shall schedule the meeting to occur as soon as practicable but no later than thirty (30) days from the date of this Order.

2. CIS shall adjudicate Plaintiff's Application for Naturalization within sixty (60) days of the aforementioned meeting.

3. If CIS concludes that Plaintiff is eligible for naturalization, CIS must permit him to be sworn in as a citizen within thirty (30) days of CIS's determination.

4. If CIS denies Plaintiff's Application for Naturalization, and Plaintiff timely files a request for an administrative hearing on the denial, CIS shall hold a hearing on the administrative appeal within ninety (90) days from the request for an administrative hearing. CIS shall issue a decision on Plaintiff's administrative appeal within ninety (90) days from the review hearing.

5. If CIS denies Plaintiff's administrative appeal, Plaintiff may move to re-open this case and amend his pleadings within one hundred and twenty (120) days from the denial so that this Court can review the denial of his application, *de novo*, under 8 U.S.C. § 1421(c).

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 12 and to close this case.

Dated: August 18, 2020　　　　　　　　　　　　SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge